**SO ORDERED.**
**SIGNED 16th day of October, 2026**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

**Randal S. Mashburn**
**Chief U.S. Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Hidden Valley Lakes Trustees, Inc., | ) | Case No. 1:26-bk-02432 |
| | ) | Chapter 11, Subchapter V |
| Debtor. | ) | Judge Randal S. Mashburn |
| | ) | |
| | ) | |
| Christine Owen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 1:26-ap-90059 |
| | ) | |
| Phillip G. Young, Jr., individually and in his official capacity as Receiver; McLemore Auction Company, LLC; and Will McLemore, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The motions to dismiss before the Court involve a plaintiff filing suit against a receiver and, on substantially related claims, an auctioneer company and its principal, without obtaining approval to do so from the state court that appointed the receiver. Plaintiff argues that prior approval was not required or should be excused. The Court disagrees and dismisses the complaint.

## FACTS AND BACKGROUND

The following facts are taken from the Second Amended Complaint (Doc. 3), notwithstanding the pending Motion to Strike the Amended Complaint and Plaintiff's Motion for Leave to File Second Amended Complaint. Because the Motion to Strike and Motion for Leave to File are substantially related to the Motions to Dismiss, the Court consolidated the matters for hearing.

The Court considers the Second Amended Complaint to the extent it might save this proceeding from dismissal, if accepted by the Court. The Court also includes facts from other documents in the record that are referenced in the Second Amended Complaint or provide undisputed background. In short, even giving the Plaintiff the benefit of the doubt on the other pending motions, the Plaintiff cannot survive the dismissal request.

This case relates to the purchase by Plaintiff Christine Owen (or, rather, her designee, God's Country Farm, Inc.)[1] of property in the Hidden Valley Lakes development at an auction conducted by Defendant McLemore Auction Company, LLC at the request of Defendant Phillip G. Young, Jr., as Receiver for Hidden Valley Lakes Trustees, Inc.

The receivership entity and bankruptcy debtor, Hidden Valley Lakes Trustees, Inc. (the "Debtor"), serves as the property owners' association for the Hidden Valley Lakes development. As of the bankruptcy filing in May 2026, the Debtor also owned approximately 1,800 residential lots in the development. ("Declaration of Phillip G. Young, Jr.," Case No. 26-02432, Doc. 4.)

Mr. Young was appointed Receiver for the business and assets of Hidden Valley Lakes Trustees, Inc. by the Chancery Court for Hickman County, Tennessee (the "Chancery Court") in the case of *Mark Why et al. v. Hidden Valley Lakes Trustees, Inc.*, Case No. 25-CV-8159 (the "Receivership Case"). (Doc. 3, ¶ 3.) The Chancery Court

---

[1] In her Second Amended Complaint, Ms. Owen seeks to add God's Country Farm as a plaintiff. Because that has not yet been approved, the Court refers to Ms. Owen as the Plaintiff.

entered an Agreed Order Appointing Receiver (the "Receivership Order") on June 30, 2025.[2] (Doc. 25-5.) Pursuant to the Receivership Order, the Receiver was granted "immediate possession and control of the business and assets of Hidden Valley Lakes Trustees, Inc." and all "powers and duties described and provided for in T.C.A. § 29-1-103 et seq." (*Id.* at 1.)

The Receivership Order specifically provides that the Receiver has the authority "to enter into purchase and sale agreements to sell and transfer, subject to further order of this Court, the Receivership Assets in one or more transactions"; after notice and Court approval, sell any or all Assets; and "engage a broker to solicit buyers and other interested parties" in a sale of Assets. (*Id.* at 2, 4.)

Mr. Young retained the services of Defendants McLemore Auction Company, LLC and its principal, Will McLemore, to conduct an online auction of multiple lots in the Hidden Valley Lakes subdivision in October and November 2025. (Doc. 3, ¶ 9.)

Plaintiff alleges that no order authorizing the auction and sale of lots was entered by the Chancery Court prior to the Receiver beginning the online auction process on or about October 10, 2025. (Doc. 3, ¶ 27.) While the auction was ongoing, lot owner Jason Clark filed an emergency motion to enjoin the auction, based upon lack of notice and lack of prior court approval. (*Id.* ¶ 29). The Chancery Court denied the motion by Order entered on November 4, 2025. (*Id.*; "Nov. 4, 2025, Order", Doc. 25-9.) In its November 4, 2025, Order, the Chancery Court states that the "on-line auction [was] anticipated as early as August 29, 2025." Notwithstanding potentially conflicting language in the Receivership Order about the need for Court approval of any sale, the Chancery Court further stated:

[2] The Plaintiff filed a Motion for Judicial Notice of the docket and several filings and orders from the Receivership Case. (Doc. 25.) The Court has not and does not rule on that motion; however, the Court considered the orders from the Receivership Case that were expressly referenced in the Second Amended Complaint, which is permitted on consideration of a motion to dismiss. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

> it was the intent of the Court to give the receiver discretion on what was to be sold and then make an accounting to the Court. The sale of lots objected to by Mr. Clark has been in the pipeline … since August, 2025 and, now, on the threshold of the closing of the on-line sales[,] objection is made. The Court specifically finds that it was the intent of the Court upon receipt and review of the August 29, 2025 report of the receiver that the Receiver was to have authority to sell the specified lots by auction as indicated in the report.

(Doc. 25-9.) The Chancery Court then denied the motion to enjoin the auction. (*Id.*)

Ms. Owen participated in the online auction. She and/or her designee God's Country Farm, Inc., purchased a lot for approximately $1,200.[3] (Doc. 3, ¶ 1-2; Exs. J, K, N.) Plaintiff alleges that the lot was marketed as having a cabin improvement or travel trailer, but she learned after the auction that the property purchased lacked either a cabin or travel trailer. Plaintiff claims to have been damaged in the amount of $73,211 "as a result of the absence of the represented improvements." (*Id.* ¶ 77.) In addition to the lack of cabin or trailer, Plaintiff alleges multiple irregularities in the auction process.

Based on these and additional detailed facts, Plaintiff asserts claims of violation of the Tennessee Consumer Protection Act, Fraud/Intentional Misrepresentation, Negligent Misrepresentation, and Breach of Fiduciary Duty (solely against the Receiver).

**Procedural History**

Plaintiff initiated this suit against the Receiver and auctioneer by filing a Complaint in the Chancery Court on April 24, 2026 (Case No. 26-cv-8446). It was removed to the United States District Court for the Middle District of Tennessee on May 26, 2026, by the Receiver, after the Receiver had filed the bankruptcy case for

---

[3] Ms. Owen states that the property was initially conveyed to God's Country Farm, Inc., and then quitclaimed to Ms. Owen. (Doc. 3, ¶ 2). Initial and current ownership are not dispositive of any issues relating to this ruling. The defect that requires dismissal applies regardless of the identity of the property owner and auction participant. Because the Court is ruling on procedural grounds, the Court does not address the Defendants' arguments that Ms. Owen lacks standing because she was not the purchaser of the property at auction.

Hidden Valley Lakes Trustees, Inc. on May 21, 2026. The case was then referred to this Court by order of the District Court on May 28, 2026, due to its relation to the bankruptcy case of Hidden Valley Lakes Trustees, Inc. and the standing order of reference adopted in this District pursuant to 28 U.S.C. § 157.

Plaintiff did not seek approval from the Chancery Court to sue the Receiver and his auctioneer agents prior to filing suit. That undisputed fact is the most crucial point in mandating dismissal of this adversary proceeding.

Prior to the bankruptcy filing, the Receivership Case was stayed due to Ms. Owen's appeal of the Chancery Court's February 16, 2026, order certifying a class of the approximately 1,200 Hidden Valley Lakes property owners (other than the Debtor) (the "Class Certification Order"). (Case No. 26-02432, Doc. 4, ¶ 17-30.) Ms. Owen moved to enforce the stay under Tenn. Code Ann. § 27-1-125, which imposes a stay upon appeal of class certification, and the Chancery Court stayed the Receivership Case on March 11, 2026.

## DISCUSSION

### I. Standard of Review

"A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is designed to test the sufficiency of the complaint." *Ohio v. United States*, 849 F.3d 313, 318 (6th Cir. 2017) (quoting *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citations omitted).[4] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is appropriate "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. United States Dep't of Homeland Sec.*,

[4] Fed. R. Bankr. P. 7012 incorporates by reference Fed. R. Civ. P. 12(b) and makes it applicable in adversary proceedings.

679 F.3d 425, 429 (6th Cir. 2012) (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 452 (6th Cir.2003)).

The defendant bears the burden of showing that the plaintiff has failed to state a claim for relief. *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017).

**II. The Barton Doctrine**

As a general rule, before a receiver may be sued, a plaintiff must obtain leave of the court that appointed the receiver. *Barton v. Barbour*, 104 U.S. 126, 128 (1881) (involving a receiver for a railroad appointed by a state court). This is known as the Barton doctrine. The doctrine applies whether the suit is brought against the receiver to recover property or obtain a monetary judgment. *Id.* at 129. One rationale for the doctrine is to prevent one claimant from gaining advantage over other claimants upon the receivership assets. *Id.* at 128. Additionally, the "Barton Doctrine sets up a gatekeeping function that recognizes the appointing court's jurisdiction and allows that court to monitor the trustee's work and control burdensome litigation." *Bluegrass Natural Resources, LLC v. Beckman* (*In re Inmet Mining, LLC*), No. 23-70113, 2024 WL 3586837, at *2 (Bankr. E.D. Ky. July 30, 2024).

The Barton doctrine is a principal of federal common law followed by the Sixth Circuit. *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993) ("It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court.").

Mr. Young was appointed Receiver by a Tennessee court pursuant to a Tennessee statute. Tennessee courts have not ruled squarely on whether a receiver appointed under Tennessee law may be sued for acts performed in the receiver's

official capacity without leave of the appointing court.[5] However, the Tennessee Supreme Court has ruled on the common exception to the rule – that a receiver may be sued without permission and in other fora for torts and defaults while operating the business under receivership. *See Burke v. Ellis*, 58 S.W. 855, 856 (Tenn. 1900) (involving suit for personal injuries).[6] In the absence of Tennessee Supreme Court authority, the Court "must predict how the court would rule by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

When adopting the "Uniform Commercial Real Estate Receivership Act," Tenn. Code Ann. § 29-40-101, *et seq.*, effective July 1, 2018, the Tennessee legislature codified the Barton doctrine for receivers appointed under that Act. After providing that a receiver is entitled to immunity "for an act or omission within the scope of the receiver's appointment," § 29-40-118(a), the Tennessee Code provides that "[a] receiver may be sued personally for an act or omission in administering receivership property *only with approval of the court that appointed the receiver*," § 29-40-118(b) (emphasis added). Both parties rely on the Uniform Commercial Real Estate Receivership Act for various arguments, but it is not clear to the Court that the Act would strictly apply when a receiver is appointed under T.C.A. § 29-1-103 without reference to the Act. Therefore, the Court considers it very persuasive analogous authority rather than controlling legislation.

---

[5] Tennessee courts have held that when receivership property is at issue, a plaintiff must petition for relief in the receivership case or permission to sue in another forum. *See Young v. Vanhooser*, 74 Tenn. 136, 138 (1880) (holding that a complainant contesting title or possession to land in the charge of a receiver in chancery court must "petition *pro interesse suo* in the suit in which the receivership exists, setting out his title, and asking for possession on the title, or leave to assert the title in a suit for the purpose"); *New River Lumber Co. v. Tenn. Ry. Co.*, 238 S.W. 867, 876 (Tenn. 1922) (holding that when a chancery court in another county had appointed a receiver for the subject railroad, the petitioner complaining of defaults by the railroad in not furnishing sufficient log cars, the "complainant's remedy … must be sought in the court which appointed the present receiver or with permission of that court," and finding that it did not "have jurisdiction of the property of [the railroad]").

[6] This exception does not apply in this case. This case does not involve a slip and fall on the Hidden Valley Lakes property. It involves the Receiver carrying out a court-approved sale (*i.e.*, within his receivership functions, not business operations functions).

Receiver immunity is not new or limited to the Uniform Commercial Real Estate Receivership Act. Under Tennessee law, "receivers who act within the scope of authority granted to them by their appointing court are entitled to quasi-judicial absolute immunity for their actions." *NPF IV, Inc. v. Servicemaster Diversified Health Servs., L.P.*, No. 4:95-CV-141, 1998 WL 1073910, at *5 (E.D. Tenn. Apr. 10, 1998), aff'd, 181 F.3d 102 (6th Cir. 1999) (determining Tennessee law in the absence of Tennessee Supreme Court authority). Protecting receivers from having to defend suits for which they are immune is one rationale for the Barton doctrine.

The gatekeeping rationale for the Barton doctrine under federal law applies equally to Tennessee state court appointed receivers, whether appointed under Tenn. Code Ann. § 29-1-103 or the Uniform Commercial Real Estate Receivership Act. The Court concludes that a Tennessee court would apply the Barton doctrine, as codified in the Uniform Commercial Real Estate Receivership Act, more broadly to receivers generally. There is no reason to think that a Tennessee court would decline to provide that protection to some receivers in this state, when it is statutorily provided to others.

In addition to the Barton doctrine being a longstanding rule under federal common law, multiple other states apply the doctrine or its equivalent. *See, e.g., Considine v. Murphy*, 773 S.E.2d 176, 178 (Ga. 2015) ("For almost 140 years, this Court has recognized that court-appointed receivers are indeed 'responsible to no other tribunal' than the appointing court for their actions with respect to the receivership, and thus no suit may proceed against a receiver without first obtaining leave of the court appointing him."); *Fontain v. H&R Cincy Props., LLC*, 187 N.E.3d 1, 14 (Ohio Ct. App. 2022) ("Because a receiver is an 'arm of the court,' it is well settled as a matter of common law that a litigant cannot file suit against a receiver without first seeking leave of the court that appointed the receiver."); *Asset Recovery Grp., LLC v. Cabrera*, 233 So. 3d 1173, 1176 (Fla. Dist. Ct. App. 2017) (Under Florida law, the Barton doctrine, "applies equally whether a state court appointed receiver is sued in state court or in federal court," and a "requesting party must demonstrate a *prima facie* case of liability before the appointing court may grant leave to file suit.") (cleaned up;

citation omitted); *Anes v. Crown P'ship, Inc.*, 932 P.2d 1067, 1070 (Nev. 1997) ("Generally, a receiver cannot be sued without leave of the appointing court. The purpose of the rule is to accommodate all claims possible in the receivership action under the supervision of the appointing court, and to render the receiver answerable solely to that court.") (citation omitted).

After considering analogous Tennessee law, the breadth of other jurisdictions applying the doctrine, and the rationale for the doctrine, the Court concludes that the Barton doctrine applies under Tennessee law.

The Court also concludes that Tennessee would extend the doctrine to a receiver's agents under the circumstances in this case. The extension to agents is frequently applied in federal courts, including the Sixth Circuit. The Barton doctrine extends not just to the court-appointed fiduciary but also to his or her agents and representatives, who are the "functional equivalent" of the fiduciary when they act at the fiduciary's direction and for the purpose of administering the estate or protecting its assets. *Allard*, 991 F.2d at 1241, *cited in Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 321 (6th Cir. 2006); *see also Lunan v. Jones* (*In re Lunan*), 489 B.R. 711, 724 (Bankr. E.D. Tenn. 2012) (The Barton Doctrine "applies not only to a bankruptcy trustee but also to those individuals who are the 'functional equivalent of a trustee.'") (citation omitted).

In a matter of first impression, the Ohio Court of Appeals recently held that the Barton doctrine applies to a receiver's employees and attorneys. *Fontain*, 187 N.E.3d at 15. Its rationale is quite convincing.

> We have been unable to locate any Ohio case law specifically addressing whether the Barton doctrine applies to a receiver's employees and attorneys. But as mentioned above, the purposes of the Barton doctrine include that a suit against a receiver is a suit against the appointing court, that courts of equity may extend "all proper protection" to the receivers they appoint, and that a receiver ought not be required to respond "to the possibly conflicting orders of two or more superiors." *Bancohio*, 1988 WL 46193 at *3. **These purposes would be frustrated if a litigant could get around the rule by suing not the receiver, but instead suing its employees and attorneys for actions**

> **undertaken on behalf of the receivership.** Therefore, we hold, that in a situation like this one, the Barton doctrine requires that a litigant obtain the permission of the court that appointed a receiver to sue a receiver's employees or attorneys as to acts performed within the scope of their work for the receiver.

*Id.* (emphasis added).

Based on the Court's conclusions regarding application of the Barton doctrine, Plaintiff was required to first seek approval from the Chancery Court that appointed Mr. Young as Receiver prior to suing him and the auctioneer defendants on the facts alleged and claims asserted. The Receiver and the auctioneer defendants were carrying out a court-approved sale. Plaintiff disputes whether the sale was appropriately approved, but she cannot dispute that the Chancery Court expressly stated it considered itself to have approved the sale. Plaintiff's other complaints all relate to how the sale was marketed and conducted. The Receiver and the auctioneer defendants are protected in carrying out the duties assigned to the Receiver by the Chancery Court, and the Barton doctrine further protects them from defending suits without the Chancery Court's review and permission.

Plaintiff's excuses for not seeking and obtaining Chancery Court approval are not convincing.

### A. *Ultra Vires* Exception

First, Plaintiff argues that she was excused from seeking prior approval of the Chancery Court because she included a breach of fiduciary duty claim against the Receiver in her original complaint and subsequently included claims that the Receiver's actions were *ultra vires* in her amended complaints. Some courts recognize an exception to the Barton doctrine for *ultra vires* actions, for which the receiver would not be entitled to immunity. *See, e.g., Grant Konvalinka & Harrison, PC v. Banks* (*In re McKenzie*), 716 F.3d 404, 414-15 (6th Cir. 2013) (For the doctrine to apply, the trustee must have been acting in his official capacity and within the scope of his authority, which the Sixth Circuit presumes, unless facts demonstrating otherwise were alleged at the outset.).

"The situation in which trustees have been most commonly found to have acted outside of their authority is in seizing property which is found not to be property of the estate." *Id.* at 415 (quoting *Schechter v. Illinois* (*In re Markos Gurnee P'ship*), 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995), aff'd sub nom. *State of Ill., Dep't of Revenue v. Schechter*, 195 B.R. 380 (N.D. Ill. 1996)). However, "claims based on acts that are related to the official duties of the trustee [have been found to be] barred by the Barton doctrine even if the debtor alleges such acts were taken with improper motives." *Id.* (quoting *Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012)). Thus, it would be the rare complaint that would, on its face, fall outside the doctrine.

The claims in this case relate directly to the Receiver's official duties. Rather than alleging truly wrongful actions such as seizure of property not part of the receivership, Plaintiff alleges a number of less serious technical or procedural flaws in the sale process. In some cases, the allegations are contradicted within the complaint itself. For example, Plaintiff alleges the auction conducted in October and November 2025 was *ultra vires* because the Chancery Court did not enter an order expressly approving the auction prior to its commencement. However, the complaint also refers to the Chancery Court's November 4, 2025, Order in which the Chancery Court stated that it anticipated the sale and "specifically" found that it intended to approve the sale based on the Receiver's August 29 report. The Chancery Court is in the best position to determine whether the auction was outside the Receiver's authority and whether the Plaintiff's suit should proceed. The language in the November 4, 2025, order leaves no doubt about the Chancery Court's intention in that regard.

In connection with the claim of a breach of fiduciary duties, the Plaintiff claims that the Receiver "owed fiduciary duties to the entity [Hidden Valley Lakes] and its stakeholders." However, the Plaintiff has not included any allegations that place herself or God's Country Farm within the scope of persons to whom the Receiver owed fiduciary duties. The Plaintiff does not allege that either she or God's Country Farm owned property in the Hidden Valley Lakes subdivision prior to purchasing property

at the auction. In fact, she describes herself as "a purchaser of real property offered in the Hidden Valley Lakes auction at issue." (Doc. 3, ¶ 1.)

With respect to the auction, the Plaintiff and God's Country Farm were members of the general public, not Hidden Valley Lakes stakeholders. Therefore, the breach of fiduciary duty claim appears weak and likely subject to dismissal for failure to state a claim were the Court ruling on that basis.

In any event, the allegations, however labeled by Plaintiff, merely involve asserted flaws in the methods, timing, and procedures used by the Receiver and his professionals in carrying out the Receiver's approved official duties. Using the label of "breach of fiduciary duty" is not enough to place the Plaintiffs' complaint outside the Barton Doctrine when the nature of the claims otherwise fall squarely within the Barton doctrine.

**B. Stay of Receivership Case**

The Plaintiff also argues that she should be excused from seeking permission from the Chancery Court to sue the Receiver because the Receivership Case is stayed. She cites no legal authority in support of her argument that the stay provides an excuse from obtaining approval to sue. Since the Plaintiff caused the stay by appealing the Chancery Court's Class Certification Order and insisting the statutory stay be honored, the Court is not sympathetic to any difficulty it could present.

**C. Filing in the Forum Court**

The Plaintiff also argues that she satisfied the Barton doctrine by filing suit in the same forum as the Receivership Case – Hickman County Chancery Court. She cites *Allard*, 991 F.2d at 1240, on this point. The Sixth Circuit restated the Barton doctrine as: "It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action *in a non-appointing forum* against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Id.* (emphasis added). However, the issue of whether merely filing in the forum court satisfied the Barton doctrine was not before the Sixth Circuit.

Courts addressing that specific issue are divided. *Compare CIT Comms. Fin. Corp. v. Maxwell* (*In re marchFIRST, Inc.*), 378 B.R. 563, 566-67 (Bankr. N.D. Ill. 2007) (dismissing a suit against a trustee filed in the appointing court and in an active bankruptcy case, and holding that "the [Barton doctrine] should apply regardless of the lawsuit's forum," based on a gate-keeping rationale: a plaintiff should first "demonstrate that it has a prima facie case" before being allowed to sue the trustee to avoid unnecessary burden of defense, distraction, and expense); *Considine*, 773 S.E.2d at 179 ("In states like Georgia that treat the [Barton] rule as jurisdictional, the prior-leave requirement applies even to a separate lawsuit filed in the same court that appointed the receiver."), *with CIT Comms. Fin. Corp. v. Maxwell* (*In re marchFIRST, Inc.*), No. 01 B 24742, 2008 WL 4287634, at *2 (N.D. Ill. Sept. 12, 2008), aff'd sub nom. *In re marchFIRST Inc.*, 589 F.3d 901 (7th Cir. 2009) (affirming the bankruptcy court on other grounds, but noting its "doubt" of the bankruptcy court's conclusion that the Barton doctrine should apply when a proceeding is filed against a trustee in the bankruptcy case); *CERx Pharmacy Partners, LP v. RPD Holdings, LLC* (*In re Provider Meds, LP*), 514 B.R. 473, 476 (Bankr. N.D. Tex. 2014) (viewing the Barton doctrine as jurisdictional and agreeing with courts concluding in the bankruptcy context "that a party does not need leave to sue a trustee in the appointing court").

Under Tennessee authority, it's notable that the Tennessee legislature did not limit the pre-approval requirement to suits outside the forum in the recently-enacted Uniform Commercial Real Estate Receivership Act. *See* § 29-40-118(b).

Moreover, considering the gatekeeping rationale for the Barton doctrine, the Court is not convinced that filing in the same state court forum satisfies the requirement. It is the judge assigned to the Receivership Case that should determine whether a plaintiff may sue the Receiver. Simply filing a complaint in the same county forum would not necessarily bring the complaint to the attention of the actual receivership judge, even in counties with only one judge. Complaints frequently do not receive a judge's attention until a motion is filed or some type of case management process begins.

Under Plaintiff's theory, a judge would have to review a complaint *sua sponte*, recognize its association with a pending receivership case, and decide to transfer the case to the receivership judge. Or, if the judge is also assigned the receivership case, the judge would need to decide whether a summons should be issued and the case should proceed – all without any motion or petition by the plaintiff for permission to proceed with the suit. Such a process, requiring constant diligence and *sua sponte* action by judges involved, would defeat the whole purpose of the Barton doctrine. By filing a new case in the same forum without a motion or petition, the burden is placed on the receiver to defend a suit that the receiver-appointing court may not have allowed to proceed. This Court rejects the scenario that shifts the entire burden to judges and defendants to enforce the Barton doctrine rather than the simple rule that the Plaintiff has the burden of first seeking and obtaining permission to sue.

Plaintiff did include a reference to the Receivership Case in her original complaint. (Doc. 1-2.) However, she did not file a motion with her complaint or take any other action to request permission of the Chancery Court, in particular the judge overseeing the Receivership Case, to proceed with her suit. Simply filing her complaint in the same forum and referencing the Receivership Case was not sufficient to comply with the Barton doctrine.

**D. Conclusion**

The Court finds that dismissal without prejudice is appropriate. This leaves the Plaintiff with the option to return to Hickman County Chancery Court to request permission to sue the Receiver and auctioneer defendants and try again.

While there may be grounds for this Court to abstain from determining the merits of this suit and remand to Chancery Court, remanding does not solve the Plaintiff's problem that the suit was improperly filed at the outset.

Based on the dismissal, all other pending motions are moot.

IT IS SO ORDERED.